FILED
 2012 May-07  PM 01:43
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **ERIC E. BURNS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **3:11-cv-1370-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Eric E. Burns ("Burns") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, will **AFFIRM** the decision denying benefits.

## I. Procedural History

Burns filed applications for disability benefits and supplemental security income on October 28, 2008, (R. 88, 95), alleging a disability onset date of September 29, 2008, (R. 95), due to Legg Calv Perthes affecting his hip, a herniated disc in his back, and adult ADD, that prevent him from standing, sitting, or bending for long periods without major pain in his lower back and hips. (R. 116). Burns also alleges that back and hip pain limit his movement and prevent him from working. *Id*.

After the SSA denied his application on December 9, 2008, (R. 71), Burns requested a hearing, which occurred on January 28, 2010, (R. 80). At the time of the hearing, Burns was 29 years old, 6 feet and one inch tall, weighed 350 pounds, had a tenth grade education, and his past relevant work included work as a cashier and a gate guard. (R. 19, 22). On April 26, 2010, the ALJ issued his decision in which he found that Burns has degenerative disc disease of the lumbar spine, plantar fasciitis, and obesity. (R. 18). However, the ALJ determined that Burns had a residual functional capacity ("RFC") that allowed Burns to perform a reduced-range of light-level work and that Burns can perform his past relevant work as a cashier and a gate guard. (R. 19, 22). Therefore, the ALJ denied Burns' claim. (R. 22-23). Burns appealed and on February 18, 2011, the Appeals

Council denied Burns' request for review. (R. 1). Burns then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by

substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)   whether the claimant is currently unemployed;

(2)   whether the claimant has a severe impairment;

(3)   whether the impairment meets or equals one listed by the Secretary;

(4)   whether the claimant is unable to perform his or her past work; and

(5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, Burns alleges disability because of pain, he must satisfy additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it

can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find him disabled unless the ALJ properly discredits his testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the claimant's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the claimant and render a finding of disability.  *Id*.

## IV.  The ALJ's Decision

Turning now to the ALJ's decision, the court notes that, performing the five step analysis, initially, the ALJ determined that Burns has not engaged in substantial gainful activity since September 29, 2008, and therefore met Step One. (R. 18).  Next, the ALJ acknowledged that Burns' severe impairments of "degenerative disk disease of the lumbar spine; plantar fasciitis; and obesity" met Step Two.  (R. 18).  The ALJ then proceeded to the next step and found that Burns did not satisfy Step Three since he does not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ." (R. 18).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Burns

> has the residual functional capacity to perform light work . . . except he can lift 10 pounds occasionally with either hand; that he cannot

> tolerate a job requiring prolonged sitting and needs a sit/stand option; and that, throughout an eight hour workday, the claimant can sit for 30 minutes at a time, stand for 10 minutes at a time and walk for 1/2 a block at a time.

(R. 19). In light of Burns' RFC, the ALJ held that Burns "is capable of performing past relevant work as a gate guard and cashier," (R. 22), and determined that Burns is not disabled, (R. 29); *see also McDaniel*, 800 F.2d at 1030. It is this finding that Burns challenges.

## V.  Analysis

The court turns now to Burns' contentions of error. Specifically, Burns alleges that the ALJ "erred as a matter of law in determining that he is not entitled to SSDI and SSI benefits" for three reasons: (1) the ALJ's finding discrediting Burns' pain testimony is not based on substantial evidence, (2) the ALJ's finding that Burns can return to his past relevant work as a cashier and gate guard is not based on substantial evidence, and (3) the ALJ purportedly failed to consider the effect Burns' obesity had on his medical impairments. Doc. 12 at 1. The court will address each contention in turn.

### A.   *The ALJ's Credibility Finding is Based on Substantial Evidence*

Burns' first argument is that the ALJ erred by discrediting his pain testimony. The relevant point of contention is the ALJ's finding that:

> [Burns'] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment. [Burns'] allegations of disabling back and leg pain are not supported by the medical evidence of record.

(R. 20). Burns maintains that he is "limited to less than the full range of sedentary work and that based on the testimony the Vocational Expert ("VE") . . . a finding of disabled in this case is justified." *Id.* at 8. Consequently, Burns disagrees with the ALJ and contends that the "ALJ uses the objective medical evidence in the file to discredit the allegations of [Burns], when this evidence supports the testimony of [Burns]." Doc. 12 at 4. According to Burns, the objective medical testing shows that his conditions could reasonably be expected to cause severe pain. *Id.* at 5.

Subjective complaints of pain alone are insufficient to prove disability. *See* 20 CFR § 416.929(a); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.). Instead, the pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id.* Unfortunately for Burns, a review of the entire

objective medical evidence reveals that he does not have an underlying condition that can reasonably be expected to produce the alleged severe pain Burns claims. Although Burns is correct that the medical record shows that he has "moderately large central disc herniation at L5-S1 compression . . .[and] a small disc bulge at L4-5," (R. 261), Burns overlooks that the medical evidence as a whole supports the ALJ's decision to discredit Burns' allegations of severe pain.  For example, on October 4, 2006, after examining Burns, Dr. J. Gregory Adderholt found that Burns' lower back pain is degenerative in origin, without evidence of lumbar radiculopathy, recommended that Burns lose weight, and prescribed Naprosyn, an anti-inflammatory drug.  (R. 262).  Although Burns complained of low back pain, he complained only of occasional pain in the hips and legs and alleged no weakness, numbness, or other neurological complaints.  (R. 261).  Notably, Dr. Adderholt determined that Burns "is a well developed overweight man in *no acute distress*," *id*. (emphasis added), and opined that Burns would need surgery only if Burns developed signs of radiculopathy, *id*. at 262.   In other words, nothing in Dr. Adderholt's report supports Burns' contention that he has disabling pain.

      The next report of pain occurred almost two years later when, on August 15, 2008, Burns visited Eliza Coffee Memorial Hospital because of low back pain that radiated into his right leg.  (R. 212).  Burns rated his pain at 6, conveyed that he

was not taking anything for his pain, and was discharged in good condition that same day. (R. 208, 212). Given that Burns apparently waited almost two years after visiting Dr. Adderholt to again seek treatment for his back pain and reported that he was not even taking over the counter medications for his alleged disabling pain, the Eliza Coffee medical reports simply do not help Burns establish that the ALJ erred when he rejected Burns' contentions of disabling pain.

The final medical treatment visits occurred on November 28 and 30, 2008, when Burns sought treatment for foot paint at Eliza Coffee Memorial Hospital. (R. 187-192, 197-204). On November 28, the ER physician documented that Burns' foot had only mild tenderness, which is the lowest severity level on the tenderness spectrum, (R. 198), and discharged Burns the same day in good condition, (R. 199). On November 30, Burns' foot had moderate tenderness, (R. 188), and the ER discharged him the same day in fair condition, (R. 189). Notably, X-rays of Burns' foot showed no abnormalities and the physician's impression was lumbar radiculopathy. (R. 203, 208).

The final medical report occurred on December 3, 2008, when the Disability Determination Service referred Burns for a consultative physical examination with Dr. Bharat K. Vakharia. (R. 240). Burns reported to Dr. Vakharia that "at times, pain is very severe, unbearable. Prolonged standing, bending, lifting, make pain

worse." *Id*. Dr. Vakharia found that Burns had low back pain with radiculopathy, possibility of gout, plantar fasciitis, and obesity. (R. 242). However, despite these findings, Dr. Vakharia stated that Burns is morbidly obese, but in *no acute distress*. (R. 241).

In short, on two separate occasions, despite Burns' subjective complaints of pain, two different physicians found that Burns was in no acute distress. While Burns believes that his own subjective reports of pain, coupled with his diagnosis, are sufficient to establish that he is disabled, the record before this court simply does not support such a finding. Rather, based on this record, the ALJ's finding that Burns' pain is not disabling is supported by substantial evidence.

### 1. Daily Activities

Related to Burns' contention that the ALJ erred by discrediting Burns' pain testimony, Burns asserts also that the ALJ "failed to properly consider the evidence of record pertaining to [Burns'] daily activities [and that] Burns' limited daily activities simply to [sic] not translate into the ability to perform the work related activities . . ., which is entailed in the performance of light work." Doc. 12 at 6-7. To support this contention, Burns states, "the ALJ focused on the claimant driving without a drivers license, serving three months in the penitentiary for illegal possession of xanax and lortab in 2007 but at the same time holds the fact

that the claimant does not take pain medicine reflect adversely on his credibility and form some basis for showing the claimant had the ability to perform work related activities." *Id*. at 6. This contention is unavailing for several reasons. First, driving without a license and serving three months in penitentiary are not daily activities, as that term is used in the regulations. Second, as the Commissioner stated in its brief, "[t]he ALJ, however, did not state that Burns' ability to perform these activities reflects an ability, nor did he cite any of Burns' alleged daily activities as a basis for his credibility determination." Doc. 14, at 9; *see generally* (R. 19-21). Indeed, Burns failed to cite any portion of the decision where the ALJ used *any* of Burns' daily activities to infer that Burns is capable of work related activities. In that regard, in trying to gauge Burns' daily activities, the ALJ specifically asked Burns:

> Q. What do you do all day?
>
> A. On a daily basis, between up and down on the couch and laying in the bed, that's about it. I don't ever leave home. I feed my dogs on a daily basis. I lay down - -

(R. 61). The ALJ considered this testimony and the rest of Burns' testimony and the medical records in deciding Burns' RFC and held that Burns' "allegations of disabling back and leg pain are not supported by the medical evidence of record in deciding Burns' RFC, " (R. 20), and that Burns is capable of performing at least a

reduced-level of light-work, (R.19). In other words, the ALJ never found that Burns' allegations of disabling pain are not supported by Burns' daily activities. Consequently, Burns' contention that the ALJ committed reversible error by purportedly relying on evidence of Burns driving or serving time in prison to find Burns not disabled fails.

B.   *The ALJ's Finding that Burns Can Work as a Cashier and Gate Guard is Based on Substantial Evidence*

Burns' next contentions of error center around certain alleged failures by the ALJ related to the VE's testimony. First, Burns asserts that the ALJ's finding that Burns "retained the [RFC] to perform a limited range of light work and is capable of performing his past relevant work as a cashier and gate guard" is improper because "the ALJ failed to inquire from the [VE] if the description of Burns' Past Relevant Work was consistent with the Dictionary of Occupational Titles ["DOT"] . . . ." Doc. 12 at 8. However, this omission did not violate a substantial right because the ALJ used the VE's testimony and other evidence in the record in determining Burns' relationship between the RFC and his past relevant work. (R. 19-22). As such, the error is harmless at best. *See Hennes v. Commissioner of Social Security Admin*. 130 F. App'x. 343, 346 (11th Cir. 2005). As courts have held, "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been

affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

Second, Burns contends that "the testimony of the [VE] does not, in fact, support the ALJ's findings nor is the testimony of the VE consistent with the DOT," because "[t]he DOT does not address the sit/stand option found by the ALJ in his RFC determination [and that] [i]nstead, the DOT recognizes that light work requires the ability to stand and walk for six hours of an eight hour workday." Doc. 12 at 8.  While Burns is correct that the occupational requirements for gate guard and cashier do not specifically address the sit/stand option, doc. 14-1 at 1-4, he overlooks that neither position excludes such an option, *id*.  For example, while working at  Logan's as a line cook, Logan's allowed Burns "to walk off line and sit down as [he] needed to as long as there was somebody there to cover what [he] was supposed to be doing" because of Burns' medical condition.  (R. 52).  Logan's allowed this option even though the DOT also does not specifically mention a sit/stand option for a line cook position.  *See* DOT Job No. 313.361-014.  Thus,  Burns' argument about the VE's alleged inconsistent testimony ignores the reality that there are jobs that generally "require[] the ability to stand and walk for six hours of an eight hour workday," doc. 12 at 8, that nonetheless allow a sit/stand option for individuals with medical conditions.  In that regard, as the VE testified, "there would be some cashier jobs that would allow for a person

to sit and stand . . . [and] there would be some gate guard jobs where they would be able to stand in the guard shack, or they might have to get out and walk around and look at the car, or vehicle." (R. 62). In other words, there is noting inconsistent between the VE's testimony and the DOT regulations.

Finally, Burns seizes on the discrepancy between the VE's testimony that Burns' past relevant work as a cashier was DOT #211.462-**010** and was a light unskilled job with a specific vocational preparation **("SVP") of 2**, (R. 49), and the ALJ's finding that Burns' relevant work included a "cashier (DOT 211.462-**014**), which was light and unskilled" and has a **SVP of 3**, (R. 22). Based on this discrepancy in the DOT and SVP numbers, Burns alleges that the ALJ erred since the VE never purportedly stated that Burns could perform his past specific cashier job. Doc. 12 at 11. Unfortunately for Burns, the numbers discrepancy constitutes harmless error because there is substantial evidence that supports the ALJ's finding that Burns can perform his past relevant work. First, Burns admits that he can lift about 10 pounds on a regular basis without pain, can sit for about 30 minutes before his lower back starts hurting, and can stand for about ten minutes. (R. 50-51). More importantly, Burns admitted that he can work as a security guard, which has a SVP of 3, doc. 12-1 at 1, if he can get up and move about when needed. (R. 54-55). Obviously, given Burns' admission that he can work as a

security guard, it was logical for the ALJ to conclude that Burns can perform his past relevant work as a cashier, which has a lower SVP of 2. Additionally, in reaching this determination, the ALJ considered Burns' admission and limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work . . . except he can lift 10 pounds with either hand; that he cannot tolerate a job requiring prolonged sitting and needs a sit/stand option; and that, throughout an eight hour workday, the claimant can sit for 30 minutes at a time, stand for 10 minutes at a time, and walk for 1/2 of a block at a time.

(R. 19). Likewise, the VE also took Burns' limitations into consideration when making his determination that Burns can perform the past jobs. (*See* R.62) (VE testimony that there are "cashier jobs that would allow for a person to sit and stand" and gate guard jobs that would allow the employee to stand in the guard shack or walk around as needed). Therefore, the ALJ's determination that Burns can perform his past jobs as a cashier and gate guard is supported by substantial evidence, including Burns' own testimony that he can perform reduced-range light-level jobs with a sit/stand option.

C.   *The ALJ Took Burns' Obesity Into Account*

Finally, Burns alleges that the ALJ erred by failing to properly discuss his morbid obesity. Doc. 12, at 11. This contention fails for several reasons. First, Burns failed to cite any evidence in the record to support his contention that the

ALJ did not adequately consider his obesity in combination with his medical history. Burns has the burden on this issue and failed to carry it. 20 CFR § 404.1512(a). Second, the ALJ determined Burns' RFC after considering the entire evidence, including Burns' obesity, and found "that [Burns'] medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Burns' "statements concerning the intensity, persistence, and limiting effects of these systems are not credible to the extent they are inconsistent" with the RFC. (R. 20). The ALJ's thorough review of Burns' entire medical history, (R. 20-21), suggests that he made determinations based on the combined effect of Burns' severe impairments, including the obesity. Based on the record as a whole, including the ALJ's finding as related to Burns' RFC, the court finds that the ALJ considered Burns' obesity in combination with Burns' medical history and that the ALJ's finding that Burns is not disabled is supported by substantial evidence.

## VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Burns is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance

with the memorandum of decision will be entered.

**DONE** the 7th day of May, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE